# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

---

In re:

**PATRICK J. STOVER,**

        **Debtor.**

**Chapter 11**

**Case No. 12-20086**

---

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED AUGUST 27, 2012

### ARTICLE I
### SUMMARY

On February 2, 2012, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Since that time, the Debtor has continued as debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code.

This Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code") proposes to pay creditors of Patrick J. Stover (the "Debtor") from plan cash and future income.

*This Plan provides for <u>six (6) classes of secured (or previously secured) claims; one (1) class of general unsecured claims;</u> and <u>one (1) class of equity security holders.</u> Unsecured creditors holding allowed claims will receive distributions, which the proponent of the Plan has valued at approximately seven and three-quarter cents (7.85%) on the dollar, as follows:[1]*

---

**_First_**, *upon entry of the Order confirming the Plan, the United States of America, Internal Revenue Service ("__IRS__"), shall have an Allowed Secured Tax Claim in the Amount of $8,168 and an Allowed Priority Tax Claim in the Amount of $46,177.73, both of which claims will be paid in full, with interest on the amount outstanding following each Plan distribution at the rate of 3% per annum, within five (5) years of the Petition Date.[2]   The balance of the IRS claims will be treated as general unsecured claims under Class 7 of the Plan.*

**_Second_**, *upon entry of the Confirmation Order, the State of Maine Bureau of Revenue Services ("__Maine Revenue__") shall have an Allowed Priority Tax Claim  in the Amount of $10,749.62, which claim will be paid in full, with interest on the amount outstanding following each Plan distribution at the rate of 7% per annum, within five (5) years of the Petition Date.[3]  The balance of the Maine Revenue claims will be treated as general unsecured claims under Class 7 of the Plan.*

**_Third_**, *the Plan will have an administrative reserve (the "__Fee Reserve__") in the amount of $15,000 to be used for present and future administrative claims, for outstanding fees, and for future Chapter 11*

---

[1]  This Plan provides that the Debtor through Counsel will make a total of six distributions (the Initial Distribution and the five Annual Distributions) to holders of Allowed Administrative, Secured Tax, Priority Tax, and General Unsecured Claims.  Based on currently available information, the Debtor at this time projects that holders of Allowed Unsecured Claims will be paid a total dividend of approximately 7,.85 % of the face amount of their claims through the five projected Annual Distributions.  Interested Creditors seeking more information and detail on this projection should refer to the Debtor's Disclosure Statement accompanying this Plan.

[2]  *Interested creditors should refer to  the projections set forth in __Exhibits B & C__ to the Disclosure Statement accompanying this Plan for more information.*

[3]  *Interested creditors should refer to  the projections set forth in __Exhibits B & D__ to the Disclosure Statement accompanying this Plan for more information.*

fees (collectively, "*Counsel Fees*"[4]), which are subject to Court approval, and which will be disbursed to Counsel in six equal installments.

**_Fourth_**, on or before the date (the "*Initial Distribution Deadline*") that is 120 days after the Effective Date of the Plan, the Debtor shall make an initial distribution (the "*Initial Distribution*") in the amount of $15,000, which will be distributed by Debtor's Counsel to pay (A) $10,000 of the Fee Reserve to Debtor's Counsel; (B) one-fifth ($1,633.60) of the principal portion of the IRS Allowed Secured Tax Claim; and (C) the $3,366.40 balance of funds remaining from the Initial Distribution after the foregoing payments shall be distributed as an initial installment on the principal portions of the Allowed IRS and Maine Revenue Priority Tax Claims, _pro rata_.[5]   No other creditors will receive funds from the Initial Distribution.

**_Fifth_**, to fund the Plan, the Debtor will make periodic payments to Debtor's Counsel averaging $1,700 per month, from which fund Debtor's Counsel will make five Annual Distributions in the amount of $20,400 each, to commence within one year after the Initial Distribution Deadline, which will be used to pay:

    (A)     five (5) annual Counsel Fee installments of $1,000 each to

---

[4]  **_The Debtors and their undersigned counsel have agreed that any outstanding Counsel Fees and future Counsel Fees, all of which are subject to Court approval, will be spread out over the life of the Plan so that unsecured creditors holding Allowed Unsecured Claims will receive on account of such claims their pro rata share of each Annual Distribution.  Counsel reserves the right to petition the Court at the time of discharge for an additional award of accrued, unpaid fees and expenses then due._**

[5]  **_Interested creditors should refer to the projections set forth in Exhibit B to the Disclosure Statement accompanying this Plan for more information._**

*Debtor's Counsel from the Fee Reserve, subject to Court approval;*

*(B)      the remaining four (4) annual principal payments sufficient to satisfy in full the principal portions of the Allowed IRS Secured Tax Claim and the Allowed IRS and Maine Revenue Priority Tax Claims, with Interest on such tax claims to be paid in the Fourth Annual Distribution, to be completed within five (5) years after the Petition Date;[6] and*

*(C)      General Unsecured Creditors holding Allowed Unsecured Claims in Class 7 will receive pro rata distributions of Plan Cash through each of the five (5) Annual Distributions, projected as follows: (1) First Annual:  $2,000; (2) Second Annual: $2,000; (3) Third Annual: $2,000; (4) Fourth Annual: approximately $4,138.65; and (5) Fifth Annual:  $19,400.*

*The First Annual Distribution shall be made on or before twelve (12) months after the Initial Distribution Deadline, and the Final Distribution will be made on or before sixty (60) months after the Initial Distribution Deadline, expected to be <u>on or before February 28, 2018</u>.  As stated above, distributions on the IRS (Secured and Priority) and Maine Revenue (Priority) Allowed Tax Claims shall be completed <u>on or before February 2, 2017</u> (five years after the Petition Date).  Upon completion of the Initial Distribution, and each subsequent Annual Distribution, Debtor's counsel shall transmit a disbursement report to the U.S. Trustee's Office.[7]*

---

[6]  *Interested creditors should refer to  the projections set forth in <u>Exhibits B , C & D</u> to the Disclosure Statement accompanying this Plan for more information.*

[7]  *Payments to creditors holding Allowed Secured Claims will be paid as they become due directly by the Debtor, except as otherwise expressly provided in the Plan.*

All creditors and equity security holders should refer to Articles IV through VII of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. The Debtors believe that the Plan provides for fair and equitable treatment of all claims and that the Plan is in the best interests of all creditors, and parties in interest. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

**IMPORTANT NOTICE: THE DISCLOSURE STATEMENT THAT ACCOMPANIES THIS PLAN CONTAINS IMPORTANT INFORMATION WITH RESPECT TO THIS PLAN, INCLUDING, INTER ALIA, INFORMATION CONCERNING YOUR ELIGIBILITY TO VOTE FOR THIS PLAN.**

## ARTICLE II
## DEFINITIONS

Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions. Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in the Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

2.1 Administrative Claim shall mean a claim allowable under Section 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estates under 28 U.S.C. § 1930 and Fee Claims.

2.2 Allowed, with respect to a Claim or Interest, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim; or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code Section 521 and is not listed therein as disputed, unliquidated or contingent, and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in Article VI of the Plan, or (ii) an

objection or other similar pleading has been filed and the Claim or Interest has
been allowed by a Final Order but only to the extent so allowed; or (c) with
respect to a Fee Claim incurred prior to the Confirmation Date, a claim that has
been allowed by a Final Order of the Bankruptcy Court.

2.3   <u>Allowed Amount</u> shall mean the amount of any Allowed Claim or Allowed
Interest.

2.4   <u>Bankruptcy Code</u> shall mean 11 U.S.C. § 101 *et seq.,* as in effect with
respect to the Cases on the date of filing of this Plan. All Code references herein are to
the Bankruptcy Code, unless otherwise stated.

2.5   <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the
District of Maine, or any other court with jurisdiction over the Cases.

2.6   <u>Bar Date</u> shall mean, as to Claims held by persons or entities other than
Governmental Units, May 31, 2012, and shall mean, as to Claims held by
Governmental Units, July 31, 2012.

2.7   <u>Case</u> shall mean the chapter 11 case entitled <u>In re Patrick J. Stover</u>, Case
No. 12-20086 which is pending in the Bankruptcy Court.

2.8   <u>Cash</u> shall mean payment, including by check, issued by or on behalf of the
Debtor with respect to any payment required to be paid pursuant to the Plan.

2.9   <u>Claim</u> shall mean a claim, as defined in Bankruptcy Code Section 101(5),
against the Debtor.

2.10   <u>Confirmation Date</u> shall mean the date on which the Confirmation Order
is entered on the docket of the Bankruptcy Court.

2.11   <u>Confirmation Order</u> shall mean the Order (which need not be a Final
Order) confirming the Plan pursuant to Bankruptcy Code Section 1129.

2.12   <u>Effective Date</u> shall mean the date determined in accordance with Article
IX of the Plan.

2.13   <u>Encumbrances</u> shall mean all liens, encumbrances, mortgages,
hypothecations, pledges, and security interests of any kind whatsoever.

2.14   <u>Executory Contract</u> shall mean an executory contract within the meaning of
it U.S.C. § 365.

2.15   <u>Fee Claim</u> shall mean the Administrative Claim of a professional person
for compensation and/or reimbursement of expenses, and shall include Counsel
Fees (as defined in Section I above).

2.16  <u>Final Order</u> shall mean an order or judgment of any court, administrative agency or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or certiorari has expired and as to which no appeal or motion for rehearing or petition for certiorari has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for certiorari has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for certiorari was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

2.17  <u>Initial Distribution</u> shall mean the amount of $15,000 to be made within 120 days after the Effective Date.

2.18  <u>Initial Distribution Deadline</u> shall mean the date that is 120 days after the Effective Date.

2.19  <u>Order</u> shall mean an order of the Bankruptcy Court.

2.20  <u>Petition Date</u> shall mean February 2, 2012.

2.21  <u>Plan</u> shall mean this Plan of Reorganization, as it may be amended or modified by the Debtors from time to time, together with all exhibits, schedules and other attachments hereto, as the same may be amended or modified by the Debtor from time to time, all of which are incorporated herein by reference.

2.22  <u>Plan Cash</u> shall be an amount of cash equal to $117,000 (Including the Initial Distribution), which shall be used to fund the distributions to be made under the Plan and shall be derived from funds available to the Debtor at the time of the Initial Distribution, and from future income.   During the pendency of the Plan, the Debtor shall make periodic payments into Debtor's Counsel's Chapter 11 Trust Account, and such funds shall be distributed to creditors through an Initial Distribution and Five (5) Annual Distributions, all as more specifically provided for in this Plan.

2.23  <u>Priority Claim</u> shall mean an Unsecured Claim arising before the Petition Date and entitled to priority under Section 507(a)(2) through 507(a)(9) of the Bankruptcy Code.

2,24  <u>Post-petition Bar Date</u> shall mean the date that is sixty (60) days following the Confirmation Date.

2.25  <u>Secured Claim</u> shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on the assets of the Debtor, to the extent provided in 11 U.S.C. § 506.

2.26  <u>Unexpired Lease</u> shall mean a lease that has not expired or terminated within the meaning 11 U.S.C. § 365.

7

2.27  <u>Unsecured Claim</u> shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any asset in the Debtor's estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of Section 365 of the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.01  <u>Class 1</u>.　　　　Secured Claim of Bank of America ("<u>BOA</u>") in the approximate sum of $535,977.00 secured by a first mortgage on real estate located at 23-25 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of Deeds at Book 24650, Page 182 by virtue of assignment at Book 27233, Page 125.

3.02  <u>Class 2</u>.　　　　Secured Claim of Real Time Resolutions, Inc. in the approximate sum of $63,720.00 secured by a second mortgage on real estate located at 23-25 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of Deeds at Book 24650, Page 205.

3.03  <u>Class 3</u>.　　　　Secured and unsecured claims of Ocwen Loan Servicing, LLC in the approximate sum of $183,797.00 secured in part by a first mortgage on real estate located at 29 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of Deeds at Book 25534, Page 51, by assignment recorded in Book 28927, Page 105.

3.04  <u>Class 4</u>.　　　　Secured and unsecured claims of Mechanic Savings Bank in the approximate sum of $67,290.00 secured in part by a second mortgage on real estate located at 29 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of Deeds at Book 26087, Page 84.

3.05  <u>Class 5</u>.　　　　The secured and unsecured claims of Trademark Federal Credit Union ("<u>Trademark</u>") are comprised of three loans; two of which were obtained upon the purchase of two vehicles and a pre-existing loan which Trademark claims is also secured by the vehicles. The Claims total $26,077.00.

3.06  <u>Class 6</u>.　　　　The secured claim of the United States of America, Internal Revenue Service ("<u>IRS</u>") secured by a federal tax lien on all property of the Debtor in the sum of $8,168.00.

3.07  <u>Class 7</u>.　　　　All general unsecured claims allowed under § 502 of the

8

Code.  Class 7 shall consist of all Allowed Unsecured Claims, but except as otherwise stated in this Plan, this Class shall not include (i) Claims included in another class; or (ii) unclassified Claims whose treatment is specified in Article IV of the Plan.

3.08    Class 8.    The interests of the individual Debtor and Equity Security Holder Patrick J. Stover  in property of the estate.

## ARTICLE IV

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,. U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

4.01  Unclassified Claims. Under Code section 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

4.02  Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed by the holder of the claim and the Debtor. Counsel to the Debtor shall be paid Counsel Fees as an administrative expense claim from the Initial Distribution and from Plan Cash, subject to Court order(s) approving such fees, as specified in Article I above.

4.03   Priority Claims.  Except as otherwise agreed by the Debtor and the holder of an Allowed Priority Claim, the holder of an Allowed Priority Tax Claim, except for a claim entitled to Priority pursuant to 11 U.S.C. § 507(a)(8), shall be paid in full upon the later of the Effective Date and the date which is fifteen (15) days after the date upon which such Priority Claim becomes an Allowed Priority Claim.  To the Debtor's knowledge, there are no non-tax Allowed Priority Claims in this case.

4.04  Priority Tax Claims. Upon entry of the Order confirming the Plan, the United States of America, Internal Revenue Service ("IRS"), shall have an Allowed Secured Tax Claim in the Amount of $8,168 and an Allowed Priority Tax Claim in

the Amount of $46,177.73, both of which claims will be paid in full, with interest on

the amount outstanding following each Plan distribution at the rate of 3% per

annum, within five (5) years of the Petition Date.   The balance of the IRS claims

will be treated as general unsecured claims under Class 7 of the Plan.

Also  upon entry of the Confirmation Order, the State of Maine Bureau of

Revenue Services ("Maine Revenue") shall have an Allowed Priority Tax Claim in

the Amount of $10,749.62, which claim will be paid in full, with interest on the

amount outstanding following each Plan distribution at the rate of 7% per annum,

within five (5) years of the Petition Date.   The balance of the Maine Revenue claims

will be treated as general unsecured claims under Class 7 of the Plan.

4.05   United States Trustee Fees. All fees required to be paid by 28 U.S.C. §

1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed,

dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or

before the Effective Date of this Plan will be paid on the Effective Date.

### ARTICLE V
### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01 Claims and interests shall be treated as follows under this Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---------|-------------|----------|------------|-----------|
| Class 1 | Secured Claim of Bank of America ("BOA") in the approximate sum of $535,977.00 secured by a first mortgage on real estate located at 23-25 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of | No | IMPAIRED | The claim of BOA shall be bifurcated, pursuant to Section 506, into a secured claim of $290,000.00 and an unsecured claim of $245,977.00. The secured portion of the claim is to be paid with interest at 4.5% per annum amortized over 25 years beginning on the first day of the month following the Effective Date and continuing |

| | | | | |
|---|---|---|---|---|
| | Deeds at Book 24650, Page 182 by virtue of assignment at Book 27233, Page 125. | | | monthly for 300 months equal monthly installments of $1611.91 to be paid to Bank of America directly by the Debtor.<br>The unsecured portion of the claim shall be treated as a general unsecured claim in Class 7. **Upon confirmation, Mortgage to be modified** as specified above and the Debtor shall be entitled to a provision so holding in the Confirmation Order. |
| Class 2 | Secured Claim of Real Time Resolutions, Inc. in the approximate sum of $63,720.00 secured by a second mortgage on real estate located at 23-25 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of Deeds at Book 24650, Page 205. | No | IMPAIRED | Mortgage lien to be stripped and avoided pursuant to Section 506(a) as value of collateral does not support this junior mortgage. The Claim shall be treated as a general unsecured claim in Class 7. **Upon confirmation, mortgage to be avoided in its entirety and the Debtor shall be entitled to a provision so holding in the Confirmation Order.** |
| Class 3 | Secured and unsecured claims of Ocwen Loan Servicing, LLC in the approximate sum of $183,797.00 secured in part by a first mortgage on real estate located at 29 Morse Street, Portland, Maine and recorded in the Cumberland | No | IMPAIRED | Real estate at 29 Morse Street, Portland, Maine to be sold at closing to occur on or before December 31, 2012, free and clear of liens, claims, interests and encumbrances, and secured claim to be paid to the extent proceeds are available after payment of any real estate taxes, ordinary closing costs and brokerage commissions. In the event proceeds are insufficient to satisfy |

| | | | | |
|---|---|---|---|---|
| | County Registry of Deeds at Book 25534, Page 51, by assignment recorded in Book 28927, Page 105. | | | secured claim in the amount of $196,509.62 (as of August 22, 2012), plus additional interest accrued as of closing date, or if closing does not occur on or before December 31, 2012, property shall be surrendered to Class 3 Creditor in full satisfaction of all claims. |
| Class 4 | Secured and unsecured claims of Mechanic Savings Bank in the approximate sum of $67,290.00 secured in part by a second mortgage on real estate located at 29 Morse Street, Portland, Maine and recorded in the Cumberland County Registry of Deeds at Book 26087, Page 84. | No | IMPAIRED | Real estate at 29 Morse Street, Portland, Maine to be sold at closing to occur on or before December 31, 2012, free and clear of liens, claims, interests and encumbrances, and the scheduled Class 4 secured claim of $51,457 to be paid only to the extent proceeds are available after (1) payment of any real estate taxes, ordinary closing costs and brokerage commissions, and (2) full payment and satisfaction of the Class 3 Secured Claim. The Class 4 Creditor shall also have an Allowed Unsecured Claim under Class 7 in the scheduled amount of $15,833. |
| Class 5 | The secured and unsecured claims of Trademark Federal Credit Union ("Trademark") are comprised of three loans; two of which were obtained upon the purchase of two vehicles and a pre-existing loan which Trademark claims is also secured by the vehicles. The Claims total | No. | IMPAIRED | The Trademark Claims shall be bifurcated under Section 506 and the secured portion of said claims in the sum of $17,000.00 shall be with interest at 6.0% paid directly by the Debtor over 24 months in monthly installments of $780.00 for 23 months and $104.80 for one month. The balance of its claims in the sum of $9,077.00 shall be treated as general unsecured claims in Class 7. Payment of said Claims have commenced pre-confirmation pursuant to an adequate protection |

| | | | | |
|---|---|---|---|---|
| | $26,077.00. | | | order entered by the Court. |
| Class 6 | The secured claim of the United States of America, Internal Revenue Service ("IRS") secured by a federal tax lien on all property of the Debtor in the sum of $8,168.00. | No | IMPAIRED | The IRS secured claim shall be paid in full from Plan Cash within five years after the Petition Date in five (5) equal annual installments of $1,633.60, plus interest at the rate of 3% per annum, to be paid as part of the Fourth Annual Distribution, on the principal balance outstanding as of the time of each distribution. |
| Class 7 | General Unsecured Claims | No | IMPAIRED | Holders of Allowed Unsecured Claims will receive pro rata distributions from Plan Cash, to the extent of funds available after payment of Counsel Fees, the IRS Secured Claim (and interest thereon), and priority tax claims (and interest thereon). Upon completion of each Annual Distribution, Debtor's counsel shall transmit a disbursement report to the U.S. Trustee's Office. |
| Class 8 | Equity Security Holder: the individual Debtor, Patrick J. Stover | N/A | No | Upon entry of the Confirmation Order, all property of the Debtor's estate shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent provided in the Plan. |

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01  Disputed Claim. A disputed claim is a claim that has not been

allowed or disallowed, and as to which either: (i) a proof of claim has been

filed or deemed filed, and the Debtor or another party in interest have filed an

objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.02  <u>Delay of Distribution on a Disputed Claim.</u> No distribution will be made on account of a disputed claim unless such claim is an Allowed Claim.

6.03  <u>Settlement of Disputed Claims.</u> The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

6.04  <u>Claims Subject to Allowance.</u> Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

6.05  <u>Prepetition Claim and Amendments.</u> Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.

6.06  <u>Objections to Prepetition Claims and Interests.</u> Claims and Interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or Interest is filed on or before ninety (90) days after the Confirmation Date or such other date as is provided by Order of the Bankruptcy Court upon motion of the Debtors. Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan, except as otherwise ordered by the Court.

6.07  <u>Bar Date and Objections With Respect to Post-Petition Claims.</u> Any Claim entitled to priority under Bankruptcy Code Section 507(a)(1) arising before the Confirmation Date and still outstanding 60 days thereafter shall be forever barred unless it is the subject of a proof of claim (or, in the case of a Fee Claim, an application for compensation) filed with the Bankruptcy Court on or before the Post-petition Bar Date. Any Claim that is the subject of such a proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-petition Bar Date or such other date as is provided by Order upon motion of the Debtor, except that Fee Claims shall be Allowed only by Order of the Bankruptcy Court.

## ARTICLE VII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    <u>Assumed Executory Contracts and Unexpired Leases.</u>

(a) <u>The Plan provides for the assumption of no executory contracts.</u> Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. ***Any and all executory contracts of the Debtor will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.***

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for Filing a Proof of Claim on a Claim Arising from the Rejection of a Lease or Contract is thirty (30) days after confirmation of the Plan.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01(a) above, or before the date of the order confirming this Plan, upon the Confirmation Date. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Confirmation Date.

## ARTICLE VIII
## MEANS FOR EXECUTION OF THE PLAN; MERGER

8.1  The funds necessary for the Debtor to execute and implement the Plan will come from the following sources: (a) income generated from Debtor's employment before and after the Confirmation Date; (b) assumption or rejection of certain contract and lease obligations, if any; (c) proceeds of causes of action and claims which the Debtor may elect to bring for recovery pursuant to state law and/or Sections 506, 544, 547, 548, 549, and 550 of the Bankruptcy Code (but the Debtor is not hereby undertaking any duty or obligation to any party to bring any such action or claim, and no such action or claim is being hereby waived or released by the Debtor); (d) proceeds from the sale of any property for which this Plan provides for the sale; (e) rentals from any property for which this Plan provides for the rental; and (f) any other funds generated or received by the Debtor and not allocated or paid pursuant to this Plan that may become available.

8.2  On the Effective Date, all assets of the Debtor, including, without limitation, all property of the Debtor's estate, and any tangible or intangible property, shall vest in the Debtor, free and clear of all Liens and/or Claims of creditors pursuant to 11 U.S.C. § 1141(b) except as set forth in this Plan.

## ARTICLE IX
## GENERAL PROVISIONS

9.01 Effective Date of Plan. The Effective Date of this Plan is the fifteenth calendar day following the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

9.02  <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.03  <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.04  <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maine govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.05  <u>Legally Binding Effect.</u> The provisions of the Plan shall bind all holders of Claims and Interests, whether or not they accept the Plan.

9.06  <u>Means of Cash Payment.</u> Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtor and the respective holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

9.07  <u>Delivery of Distributions.</u> Except as otherwise provided in this Plan, distributions and deliveries to holders of Allowed Claims will be made by the Debtor (i) at the addresses reflected in the proofs of claim filed by the holders of Allowed Claims (or at the last known address of such Holder if no proof of claim or motion requesting payment is filed, or if the Debtor has been notified in writing of a change of address); (ii) at the addresses set forth in any written notice of address changes delivered to the Debtor after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by the Debtor if no proof of claim has been filed and the Debtor has not received a written notice of change of address.

9.08  <u>Undeliverable Distributions.</u> If payment or Distribution to any Holder of an Allowed Claim under the Plan is not deliverable at any of the addresses set forth in the preceding paragraph and/or is returned to the Debtor for lack of a current address for the Holder or otherwise, the Holder shall have one hundred twenty (120) days after the check issuance date to notify the Debtor in writing of the Holder's then current address. In the event that the Debtor has not received written notice of such address change from the Holder within one hundred twenty (120) days after the check issuance date, the Debtor shall void the returned check or payment, and shall be relieved of any obligation to make any further payments or distributions otherwise due to the Holder, all of which payments or distributions shall be forever forfeited by the Holder. All payments or distributions so forfeited shall thereafter be distributed in future scheduled distributions to the remaining Holders in the appropriate Class or Classes, and the Allowed Claims of the Holder whose check was returned shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder whose cheek was returned, and all Claims of the Holder whose check was returned (including Claims to such distributions) shall be discharged and forever barred. In the event payments or distributions from the Final Distribution are returned to the Debtor and forfeited pursuant to the provisions of this paragraph, all funds so forfeited shall be returned to and retained by the Debtor as his sole and exclusive property.

9.09  <u>Time Bar to Cash Payments.</u> Checks issued by the Debtor in respect of distributions to Holders of Allowed Claims pursuant to this Plan shall be null and void if not cashed within one hundred twenty (120) days of the date of their issuance. Requests for reissuance of any check must be made in writing to the Debtor by the Holder of the Allowed Claim with respect to which the original check was issued,

18

within one hundred eighty (180) days after the date of issuance of the original check. If no request for reissuance is received by the Debtor within one hundred eighty (180) days after the date of issuance of the original check, all claims in respect of void checks will be discharged and forever barred, and the funds remaining from such void checks shall be forever forfeited by the Holders of Allowed Claims whose checks were voided. All funds so forfeited shall thereafter be distributed in future scheduled distributions to the Holders of Allowed Claims pursuant to the terms of this Plan. In the events that (1) checks issued for the Final Distribution are not cashed within 120 days after the date of issuance; and (2) no request in writing for reissuance of such check(s) is received by the Debtors within one hundred eighty (180) days after the check issuance date; then, such check(s) shall also be voided by the Debtor and the funds remaining shall be returned to and retained by the Debtor as his sole and exclusive property.

9.10  De Minimis Distributions.  "De Minimis Distributions" shall refer to any distribution where the amount due to the creditor for such distribution is less than $10.00. No De Minimis Distributions will be made by the Debtor to any Holder of Allowed Claims unless and until such Holder makes a request in writing to the Debtors to make such De Minimis Distributions. At the time of any distribution under this Plan, the Debtors shall have the discretion for purposes of administrative efficiency to pay Holders of Allowed Claims whose total projected future distributions equal $100 or less, in a single distribution equal to the amount of all projected future distributions that would otherwise be due to such Holders, in full satisfaction of all of such Holders' Allowed Claims.

9.11  No Interest on Claims.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder of a Claim and approved by the Bankruptcy Court, postpetition

interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, whether such Claim is an Allowed Claim or a Disputed Claim.

9.12 <u>Disputed Claims Reserve.</u> At the time of each distribution for which Disputed Claims exist, the Debtor shall maintain a reserve (the <u>"Disputed Claims Reserve")</u> equal to 100% of the distribution to which Holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were then Allowed Claims, or such lesser amount as required by a Final Order. The Holder of a Disputed Claim that becomes an Allowed Claim shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based upon distributions that would have been made to such Holder(s) under the Plan if the Disputed Claim had been an Allowed Claim on the Effective Date. No Holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, with respect to such Claim, unless and until such Disputed Claim shall become an Allowed Claim. If at the time of the Final Distribution funds remain in the Disputed Claims Reserve because one or more Disputed Claims has not become an Allowed Claim(s) as of the date the Final Distribution is due to be made under the terms of this Plan, the funds so remaining shall be distributed as part of the Final Distribution to the Holders of Allowed Claims.

9.13 <u>Modification of Confirmed Plan.</u> After the Confirmation Date, the Debtor may modify the Plan under Section 1127 of the Bankruptcy Code and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes

and intent of the Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby.

9.14  <u>Substantial Consummation.</u> For purposes of Section 1101(2), the Plan shall be deemed to have been substantially consummated when all of the following conditions have been satisfied: (a) the Effective Date has occurred, (b) all payments and conveyances required to be made on or prior to the Effective Date with respect to Claims then or theretofore Allowed have been made, (c) all documents required to be executed and delivered on or prior to the Effective Date with respect to Claims then or theretofore Allowed have been executed and delivered, and (d) all the requirements of 1i U.S.C. § 1101(2) have been satisfied.

9.15  <u>Closing of Case.</u> The Debtor shall file with the Bankruptcy Court a final accounting in accordance with D. Me. LBR 3022-1, accompanied by a proposed final decree making provisions by way of injunction and closing the case. The Debtor shall seek to close the case following completion of the Initial Distribution, with the case to be re-opened upon completion of all Distributions for the issuance of the Debtor's discharge.

9.16  <u>Dates.</u> Whenever the Plan requires the Debtor or any other entity to make a distribution or take some other action on a particular date, such action shall be taken on the required date unless parties-in-interest agree otherwise.

9.17  <u>Property of the Debtor.</u> Upon entry of the Confirmation Order, all property of the Debtor's estates shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent otherwise provided in the Plan.

9.18  <u>Retained Jurisdiction.</u> To the maximum extent permitted by applicable law, the Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

(a)      to consider and approve any amendment, modification or correction of the Plan, subject to the restrictions set forth in Bankruptcy Code Section 1127 and any modification of the Confirmation Order;

(b)      to hear and determine all  Fee Claims and all objections filed by the Debtors with respect to Claims other than Fee Claims;

(c)      to hear and determine all adversary proceedings, contested matters, or other actions commenced in the Bankruptcy Court by the Debtor against any party and pertaining to any matter, including, without limitation, proceedings for recovery of assets or avoidance of obligations or liens under Sections 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code, proceedings relating to the assumption or rejection of Executory Contracts and Unexpired Leases, and proceedings relating to the enforcement by any creditor of any remedy against the Debtor;

(d)      to hear and determine any disputes arising under the Plan, its implementation and the execution of any necessary documents thereunder;

(e)      to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

(f)      to enforce all injunctions and stays granted under this Plan or the Bankruptcy Code, and to enforce the discharge provisions of the Bankruptcy Code and the Plan; and

(g)      to make such Orders as are necessary and appropriate to carry out and implement the provisions of the Plan.

### ARTICLE X
### INJUNCTION, STAY AND DISCHARGE

10.01 **Effect of Confirmation.**  Upon entry of this Confirmation Order the terms of the Plan will bind the Debtor and the holders of all claims against the Debtor, whether or not those claim holders filed a proof of claim or voted in favor of the Plan. Once the Debtor completes all payments required by the Plan, the Debtor may seek the entry of a discharge order enjoining all claim holders from any action to enforce a claim or collect any debt owed by the Debtor prior to confirmation.  Pending entry of a discharge order, the terms of the Plan replace any and all repayment terms which

existed between the Debtor and his creditors prior to confirmation, unless the Court orders otherwise, and except as expressly provided in the Plan.  The Court retains jurisdiction to resolve any disputes which arise with respect to the terms of the Plan and the compliance of all parties therewith.

10.02 <u>Discharge.</u> Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. Upon issuance of the Discharge, except as expressly provided in the Plan, the Debtor shall, as of the date of such Discharge, have the full benefit of the discharge provided by Section 1141(d) of the Bankruptcy Code. Without limiting the generality of the foregoing (and except as provided in the Plan), the Debtor shall be permanently released and discharged from all liens, Claims, Encumbrances, and debts that arose before the Confirmation Date whether or not any such lien, Claim, Encumbrance, or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the holder of any such Claim has accepted the Plan.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]**

Respectfully submitted this  27th  day of August, 2012,


By Plan Proponent,                                    And by Barry E. Schklair, Esq.,

Debtor, Patrick J. Stover:                            Debtor's Counsel:

*/s/ Patrick J. Stover*                               */s/ Barry E. Schklair*
Patrick J. Stover                                     Barry E. Schklair, Esq.
                                                      Molleur Law Office
                                                      419 Alfred Street
                                                      Biddeford, ME  04005
                                                      207-283-3777
                                                      207-283-4558 (facsimile)
                                                      barry@molleurlaw.com